In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 23-3031

PEOPLE OF THE STATE OF ILLINOIS, ex rel. KWAME RAOUL, Attorney General of the State of Illinois,

*Plaintiff-Appellee,*

*v.*

3M COMPANY,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Central District of Illinois
No. 4:22-cv-04075-SLD-JEH — **Sara Darrow**, *Chief Judge.*

———————————

ARGUED MAY 30, 2024 — DECIDED AUGUST 7, 2024

———————————

Before ST. EVE, KIRSCH, and KOLAR, *Circuit Judges.*

KIRSCH, *Circuit Judge.* 3M Company operates manufacturing facilities throughout the United States, including in Cordova, Illinois (the Cordova Facility). At the Cordova Facility, which is located along the banks of the Mississippi River, 3M produces numerous chemical products, some of which contain per- and polyfluoroalkyl substances (PFAS). Twenty-five miles downstream from the Cordova Facility sits the United

States Army's Rock Island Arsenal. 3M develops and sells aqueous film-forming foam (AFFF)—which contains certain types of PFAS compounds—to the United States military, some of which is used and stored at the Rock Island Arsenal. (Because this AFFF complies with military specifications, it is said to be "MilSpec" AFFF.) However, 3M does not produce or use MilSpec AFFF at the Cordova Facility.

In March 2022, the State of Illinois sued 3M in Illinois state court, alleging violations of the Illinois Environmental Protection Act, 415 ILCS 5/1–5/58.17, the Illinois Fish and Aquatic Life Code, 515 ILCS 5/1-1–5/50-1, and the Illinois Wildlife Code, 520 ILCS 5/1.1–5/4.4. The State also brought its claims under several common law theories. The State alleged that PFAS from the Cordova Facility contaminated the Mississippi River. Notably, the State excluded PFAS that contaminated Illinois's environment from any facility other than the Cordova Facility (including PFAS used in AFFF) from this case.

3M removed the action to federal district court, citing the federal officer removal statute, 28 U.S.C. § 1442(a)(1), as its basis for federal jurisdiction. Specifically, 3M argued that it planned to assert the federal government contractor defense because some of the alleged PFAS contamination in the Mississippi River may have come from AFFF that 3M provided to the U.S. military and which was used or stored at the Rock Island Arsenal.

The State moved to remand the case back to Illinois state court. The district court granted the State's motion, finding that the case did not relate to a federal act because the State's complaint expressly excluded PFAS contamination sourced from AFFF and instead sought recovery only for

contamination from the Cordova Facility (where AFFF is not produced). 3M appealed.

We review the propriety of the removal of a state-court action de novo. *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018). Under the federal officer removal statute, a defendant may remove a state court action to federal court if the suit is against "any person acting under" a federal officer, and the suit is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). A defendant seeking removal based on this statute must show the following: (1) it is a person within the meaning of the statute; (2) it is acting under the United States (or its agencies or officers); (3) it has been sued "for or relating to any act under color of such office"; and (4) it has a "colorable federal defense to the plaintiff's claim." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180–81 (7th Cir. 2012) (quotation omitted).

3M cannot satisfy the fourth element. The federal government contractor defense "immunizes government contractors from state tort law when the government had a hand in a defendant's allegedly defective design." *Id.* at 1183 (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 511–12 (1988)). We need not delve further into the details of the defense, however, because the State's concessions on appeal have foreclosed 3M's ability to assert it.

3M's defense presumes that the PFAS contamination the State alleges could either have come from the Cordova Facility or from AFFF out of the U.S. Army's Rock Island Arsenal. If the contamination came from AFFF, then the government contractor defense could apply. This would be true even though the State's complaint expressly excluded 3M from liability for PFAS contamination sourced from AFFF. For

instance, if a designated area of the Mississippi River is con-
taminated with PFAS from both the Cordova Facility and
from AFFF, then a factfinder would need to apportion the
contamination between that stemming from the Cordova Fa-
cility (which would not be subject to the government contrac-
tor defense) and that sourced from AFFF (which would po-
tentially be subject to the defense).

Indeed, we have previously noted the viability of the gov-
ernment contractor defense in a similar context. In *Baker v. At-
lantic Richfield Co.*, 962 F.3d 937 (7th Cir. 2020), former resi-
dents of a housing complex sued nine industrial manufactur-
ing companies, alleging that they polluted the soil in and
around the site of the residence with lead and arsenic. *Id.* at
939. The defendants removed the case to federal court under
the federal officer removal statute, contending that they par-
tially polluted the soil at the government's direction. *Id.* at 939,
944. The plaintiffs then moved to remand the case to state
court, which the district court granted. *Id.* at 940. We reversed.
In doing so, we rejected the plaintiffs' argument that their
lawsuit disclaimed any contamination arising out of the de-
fendants' work for the government. *Id.* at 945 n.3. Instead, we
concluded that the parties' dispute over "whether the [plain-
tiffs'] injuries ar[o]se from products [the defendants] manu-
factured for the government … is just another example of a
difficult causation question that a federal court should be the
one to resolve." *Id.*

*Baker* might have supplied 3M with a colorable federal de-
fense. But the State clearly and unequivocally conceded at
oral argument that it would not seek relief against 3M for
mixed PFAS contamination—in other words, PFAS contami-
nation arising from both the Cordova Facility and from AFFF

from the Rock Island Arsenal. Further, the State expressly agreed that a factfinder will not need to apportion the PFAS contamination between sources. Simply put, for the State to recover against 3M for PFAS contamination in a designated area, 100% of that contamination must be sourced from the Cordova Facility. If even a morsel of contamination is not from PFAS produced at the Cordova Facility (such as AFFF out of the Rock Island Arsenal), the State's recovery is barred. Because of this concession, this case falls outside of the scope of *Baker*. 3M cannot present a colorable federal government contractor defense in line with *Baker* because the defense is wholly irrelevant under the State's theory of recovery. In this case, 3M is liable for PFAS contamination only in areas where the contamination is wholly derived from the Cordova Facility, and the government contractor defense does not apply to PFAS sourced from that facility. Thus, 3M's attempt to remove the case under the federal officer removal statute fails under the fourth element.

AFFIRMED